IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| ) | |
| v. ) | Criminal Action No. 3:25-cr-33-HEH |
| ) | |
| BARION WRIGHT, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**
(Denying Defendant's Motion to Suppress Evidence)

This matter is before the Court on Defendant Barion Wright's ("Defendant") Motion to Suppress (the "Motion," ECF No. 21) filed on May 21, 2025. Defendant has moved to suppress evidence of a firearm and ammunition and "all other fruits of the poisonous tree" resulting from an arrest on October 16, 2024, which Defendant contends was in violation of the Fourth Amendment. (*Id.* at 1.) The parties have filed memoranda supporting their respective positions. The Court heard evidence and oral argument on June 16, 2025, where the Court denied the Motion for the following reasons. (Min. Entry at 2, ECF No. 27.)

**I. BACKGROUND**

On the evening of October 16, 2024, Officer Walker of the Richmond Police Department was on foot patrolling the Church Hill area, which includes Whitcomb Court. Officer Walker was searching for a juvenile who was riding an illegal dirt bike and who had attempted to strike him earlier in the evening. Around 10:00 p.m., Officer Walker

observed Defendant walking in a street in Whitcomb Court. After observing Defendant, Officer Walker continued walking between two (2) buildings in the direction of Defendant, who was walking onto the sidewalk. Officer Walker shined his flashlight on Defendant and asked, "What's up bro?" Defendant stopped and raised his cell phone to his face, appearing to turn on the phone's flashlight. Officer Walker repeated, "What's up bro?"[1] at which point Defendant turned around and proceeded to walk away from Officer Walker. Officer Walker followed him—walking several feet behind Defendant—and radioed for backup. Without warning, Defendant started running. Officer Walker gave chase. While running, Officer Walker observed Defendant tug on his hoodie, eventually removing a black firearm. Seeing Defendant remove the firearm from the hoodie, Officer Walker yelled, "He got a gun! He got a gun!" and commanded Defendant to drop it. Defendant continued running and threw the firearm into the street. A few seconds later, Officer Walker caught up to Defendant and physically detained him. Officer Walker then recovered the firearm he saw Defendant throw onto the street.

On April 30, 2025, agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") interviewed Keondra Nero, the supposed owner of the firearm recovered on October 16, 2024. Ms. Nero told the ATF agents about the circumstances of her losing her firearm. At the end of the interview, the ATF agents showed Ms. Nero a

---

[1] Officer Walker wore a body worn camera during this encounter. Although the body-worn camera does not show audio or video of Defendant responding to Officer Walker's inquiries, Officer Walker testified that Defendant responded to him. Whether Defendant responded or not, however, would not change the Court's decision.

picture of Defendant, who she accurately identified. Ms. Nero was not asked whether Defendant stole her firearm, nor did she offer such a statement.

## II. LEGAL STANDARD

The Fourth Amendment prohibits law enforcement officers from conducting unreasonable searches and seizures. U.S. Const. Amend. IV. Under the Fourth Amendment, "a defendant bears the burden of establishing that he had a 'cognizable Fourth Amendment interest in the place to be searched before seeking relief for an unconstitutional search.'" *United States v. Jackson*, 638 F. Supp. 3d 622, 634 (E.D. Va. 2022) (quoting *Byrd v. United States*, 584 U.S. 395, 410 (2018)). This protection extends to unreasonable investigative stops and protective frisks that do not comport with *Terry v. Ohio*, 392 U.S. 1 (1968) and its progeny. *See United States v. Curry*, 965 F.3d 313, 319 (4th Cir. 2020) (en banc). A person is seized only when a reasonable person would believe that his or her freedom of movement is restrained by (1) means of physical force or (2) a show of authority. *United States v. Mendenhall*, 446 U.S. 544, 553–54 (1980) (holding that a person has been seized when "a reasonable person would have believed that he was not free to leave"); *see Cal. v. Hodari D.*, 499 U.S. 621, 628 (1991). Moreover, "a seizure occurs 'when the officer, by means of physical force *or show of authority,* has in some way restrained the liberty of a citizen.'" *Hodari D.*, 499 U.S. at 625 (quoting *Terry*, 392 U.S. at 19 (emphasis in the original)). Where physical force is absent, a seizure occurs only if the subject "subm[its] to an officer's 'show of authority' to restrain the subject's liberty." *Id.* at 621.

3

An investigative stop, typically called a *Terry* stop, is a brief detention that is constitutional when "at the time of the seizure, the police officer had a 'reasonable suspicion' that the person seized was 'involved in criminal activity.'" *United States v. Kehoe*, 893 F.3d 232, 237 (4th Cir. 2018) (quoting *Hiibel v. Sixth Jud. Dist. Ct. of Nev.*, 542 U.S. 177, 185 (2004)). The burden rests on the government to prove that reasonable suspicion justified the seizure. *Id.* at 237. Reasonable suspicion is more than a hunch but is less than would be required to show probable cause or a preponderance of the evidence. *Illinois v. Wardlow*, 528 U.S. 119, 123–24 (2000); *United States v. Foster*, 824 F.3d 84, 89 (4th Cir. 2016). Moreover, reasonable suspicion must be based on a particularized and objective reason to stop the suspect based on the totality of the circumstances. *Kehoe*, 893 F.3d at 237 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)); *see Florida v. Bostick*, 501 U.S. 429, 437 (1991) (holding the crucial test is whether the totality of the circumstances communicated to a reasonable person that they were not at liberty to ignore the police presence and go about their business). In this analysis, a court must give "due weight to common sense judgments reached by officers in light of their experience and training." *United States v. Perkins*, 363 F.3d 317, 321 (4th Cir. 2004) (citing *Wardlow*, 528 U.S. at 125).

Notably, a person who voluntarily abandons property prior to a seizure loses "any reasonable expectation of privacy in the property and is consequently precluded from seeking to suppress evidence seized from the property." *United States v. Leshuk*, 65 F.3d 1105, 1110 (4th Cir. 1995); *see Hodari D.*, 499 U.S. at 629. An abandonment is involuntary if it results from police misconduct. *Leshuk*, 65 F.3d at 1111.

4

## III. ANALYSIS

The Court must first determine when Officer Walker seized Defendant. Defendant asserts that he was involuntarily seized the moment Officer Walker turned on his flashlight and called out to Defendant because, at that moment, he did not feel free to walk away. *See Mendenhall*, 446 U.S. at 553; *United States v. Wilson*, 953 F.2d 116, 123 (4th Cir. 1991) (finding that a defendant was seized after he "conveyed an unequivocal unwillingness to engage in further conversation" during "the officer's prolonged and persistent questioning"); *But see United States v. Burton*, 228 F.3d 524, 528–29 (4th Cir. 2000) (holding that a defendant was not seized because he "had a 'right to go about his business or to stay put and remain silent in the face of police questioning" (citing *Wardlow*, 528 U.S. at 125)). Here, Defendant argues that a reasonable person would not have felt free to leave after Officer Walker asked questions and "flashed his flashlight upon [Defendant] and began to follow [him] as [he] walked away." (Mot. at 5.)

Conversely, the Government maintains that Defendant was not seized until Officer Walker physically detained him, at which point Officer Walker had seen Defendant discard the firearm. The Government argues that until a fleeing suspect is apprehended, he is not seized. *See United States v. Cureton*, 367 F. App'x. 434, 437 (4th Cir. 2010) (holding that a suspect fleeing from police was not seized until he submitted to the officer's order to come out from hiding). The Government also contends that shining a flashlight on an individual is not a show of authority capable of seizing an individual. *See Hodari D.*, 499 U.S. at 626 (holding that seizure requires "*submission* to the assertion of authority" (emphasis in original)). The Government highlights decisions from

5

three (3) U.S. Circuit Courts that have reached this very conclusion. In *Knights*, the Eleventh Circuit found that an officer shining a flashlight on a motorist during a traffic stop did not communicate a "show of authority" because "the totality of the circumstances establish that this encounter was not coercive." *United States v. Knights*, 989 F.3d 1281, 1287–88 (11th Cir. 2021). Similarly, in *Lawhorn*, the Eighth Circuit held that "[t]he act of shining a spotlight on a person's car typically does not constitute a seizure for purposes of the Fourth Amendment." *United States v. Lawhorn*, 735 F.3d 817, 821 (8th Cir. 2013). Finally, the Seventh Circuit in *Douglass* held that an officer's use of a flashlight was insignificant and not a reason for a reasonable person to feel they were unable to leave. *United States v. Douglass*, 467 F.3d 621, 624 (7th Cir. 2006).

Under Supreme Court precedent, a person is only seized when their freedom of movement is restrained either by physical force or a show of authority. 446 U.S. at 553. Notably, when an officer pursues an individual and orders him to halt, the individual is not seized until he is physically detained or submits to the show of authority. *Hodari D.*, 499 U.S. at 629. Moreover, the Court agrees with the several U.S. Circuit Courts that have held that shining a light on an individual does not constitute a sufficient show of authority to render the individual seized. *See Knights*, 989 F.3d at 1287–88; *Lawhorn*, 735 F.3d at 821; *Douglass*, 467 F.3d at 624. When Officer Walker shined his flashlight on Defendant and asked general questions, he was not demonstrating a show of authority. *See Mendenhall*, 446 U.S. at 553. In any case, Defendant clearly did not submit to Officer Walker's actions. *See Hodari D.*, 499 U.S. at 626. Therefore, the Court finds

6

that Defendant was not seized until Officer Walker physically apprehended him. *See Mendenhall*, 446 U.S. at 553.

Because Defendant was not seized until Officer Walker physically detained him, the Court considers whether Officer Walker had reasonable articulable suspicion at that moment. Defendant argues that Officer Walker did not have particularized reasonable articulable suspicion to seize Defendant because presence in a high crime area at night alone is insufficient to justify a *Terry* stop. *See United States v. Curry*, 965 F.3d 313, 331 (4th Cir. 2020) (noting that "presence in a high-crime area cannot alone create reasonable suspicion for a *Terry* stop" (citing *Wardlow*, 528 U.S. at 124)); *United States v. Black*, 707 F.3d 531, 539 (4th Cir. 2013) (holding that "mere presence in a high crime area at night" does not alone create reasonable suspicion for a *Terry* stop).

This argument is unavailing. Although presence in a high crime area is by itself insufficient to provide reasonable articulable suspicion, it may be considered alongside other factors present here. *See Bostick*, 501 U.S. at 437. First, Officer Walker initially encountered Defendant at Whitcomb Court, which is known for being a high crime area or "open air drug market." *See Commonwealth v. Hicks*, 563 S.E.2d 674, 51 (Va. 2002). Second, after Officer Walker twice called out to Defendant and shined his flashlight on him, Defendant ran from him without provocation. *See Wardlow*, 528 U.S. at 124 (holding that "unprovoked flight" in an area of heavy narcotics trafficking justified a *Terry* stop). Third and most notably, while running, Officer Walker observed Defendant throw a firearm into a public street—which itself could trigger criminal liability. *See* Va. Code § 18.2–56.1 (prohibiting reckless handling of firearms); Va. Code § 18.2–308

7

(prohibiting concealed carry without a permit). Therefore, when Officer Walker physically apprehended—and seized—Defendant, Officer Walker had observed Defendant throw a firearm into a public street while in the midst of unprovoked flight in a high crime area. These observations were more than sufficient to provide Officer Walker with reasonable suspicion "that criminal activity maybe afoot" and entitle him to detain Defendant. *See Terry*, 392 U.S. at 30.

Regardless of when Defendant was seized, the Government contends that Defendant abandoned all interests in the firearm when he threw it and, therefore, he has no Fourth Amendment standing to challenge the firearm's admission into evidence. *See Hodari D.*, 499 U.S. at 629 (holding defendant did not have standing to contest evidence of cocaine since he voluntarily abandoned it while running from police). Defendant asserts that he did not voluntarily abandon any property because the abandonment resulted from police misconduct[2]—namely, Officer Walker's illegal seizure. *See Leshuk*, 65 F.3d at 1111 (4th Cir. 1995) (holding that when the abandonment results from police misconduct, a person does not voluntarily abandon property).

As the Court just addressed, Defendant threw the firearm prior to being seized by Officer Walker. A defendant who abandons property during flight "g[i]ve[s] up his expectation of property." *Cureton*, 367 F. App'x. at 438 (finding no reasonable expectation of privacy when defendant abandoned a firearm during flight). Therefore, Defendant abandoned any interest in the firearm when he threw it in the street during his

---

[2] Defendant claims to maintain an alternative defense that he did not possess or throw the firearm.

8

flight, and, thus, he has no standing to challenge its recovery or any evidence stemming from it. *See Leshuk*, 65 F.3d at 1110; *Hodari D.*, 499 U.S. at 629.

Finally, Defendant contends that Ms. Nero's alleged identification on April 30, 2025, violated Defendant's constitutional rights. (Mot. to Suppress at 9.) A pretrial identification by photograph will only be set aside "'if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparably misidentification.'" *Neil v. Biggers*, 409 U.S. 188, 196–97 (1972) (citing *Simmons v. United States*, 390 U.S. 377, 384 (1968)). This final issue is moot because the government does not plan to admit the evidence of Ms. Nero's identification at trial since she was not a witness to the alleged crime.[3]

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Officer Walker had reasonable articulable suspicion to seize Defendant. Additionally, Defendant abandoned all interest in the firearm when he discarded it during flight and, thus, Defendant has no standing to suppress the firearm. Accordingly, Defendant's Motion to Suppress will be denied. An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: July 1, 2025
Richmond, VA

---

[3] At the hearing, Defendant did not contest that this issue is moot.

9